FRED L. JACOBSON, Administrator Division of CriminalInvestigation
You have requested my informal opinion concerning whether a town may issue a combination liquor and beer license to a county for use at a county golf course. Because the more basic question concerns the power of a county, I have rephrased your question as follows: May a county operate *Page 359 
an intoxicating liquor and fermented malt beverage business on county golf course premises?
A county has only those powers that the State chooses to delegate. As stated in Maier v. Racine County
(1957), 1 Wis.2d 384, 385: "County boards have only such legislative powers as are conferred upon them by statute, expressly or by clear implication." In this instance, the county has received an express delegation of power to operate a golf course:
The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language: (1) . . . (d) 1. Construct, . . . develop, . . . operate and maintain all county . . . facilities hereinafter in this subsection referred to as "projects," including without limitation . . . golf courses . . . and including all property, real and personal, pertinent or necessary for such purposes. Sec. 59.07 (1) (d) 1.
Your question concerns the sale of alcoholic beverages. Therefore, it is appropriate to analyze the liquor and beer statutes first to determine if a county has received an express or necessarily implied delegation of power to engage in the sale of such beverages.
The sale of intoxicating liquor and beer is governed by ch. 176 and sec. 66.054, Stats., respectfully. These regulatory statutes are an "enactment of state-wide concern for the purpose of providing a uniform regulation of the sale of . . ." such beverages. [Sec. 176.44 and 66.054 (16), Stats.] Nowhere in these sections is a county given authority to hold a license for the sale of liquor and beer at a golf course. In fact, the statutes designate specific exceptions for when a county can engage in alcoholic businesses: sec. 176.05 (4b), Stats., allows a county to designate a concessionaire to apply for a license for use at county airports or arenas; sec. 176.05 (24), Stats., exempts a municipality, established stadiums and state fair park premises from the prohibition of operating without a license; sec. 66.054 (5) (e), Stats., allows a county to sell beer in a county park without obtaining a license; and 66.054 (8) (b), Stats., grants authority to a county fair to obtain a class B beer license. *Page 360 
In the same light, prior to 1969, the legislature provided an exemption for cities, villages and towns under sec. 176.08, Stats., to operate municipal liquor stores. Then, by ch. 186, Laws of 1969, sec. 176.08 was completely reversed to prohibit these units of government from engaging in the sale of liquor or beer except for the instances noted in that section. I have pointed out this section to emphasize that local units of government operate on delegated powers. When the lawmakers decide that a county or another local unit of government may engage in a certain activity, they make an express provision concerning the county in the statutes.
A county has not been expressly delegated the power to operate an alcoholic business under the liquor laws at a golf course. It is equally clear that a county is not one of those entities that is included in the coverage under these statutes. Sections 176.05 (13) and 66.054 (8), Stats., provide that licensing authorities can issue licenses to persons, domestic corporations or foreign corporations. It is true that a county is a "body corporate," sec. 59.01 (1), Stats. It is also true that the colloquial meaning of "body corporate" is synonymous with "corporation." [See Webster's Third International Dictionary] However, these two terms are not synonymous in their legal sense as can be seen by the functions each performs. As stated in 1 McQuillin,Municipal Corporations (3d Ed., 1959), sec. 2.03, p. 448:
"Strictly speaking, a public corporation is one that is created for political purposes only, with political powers to be exercised for purposes connected with the public good in the administration of civil government, as distinguished from a private corporation which is one created for purposes other than those of government . . . . Public corporations are not only creations, but also instrumentalities of the state. If deemed a corporation of any kind, organizations variously styled public . . . created by the sovereign power for public or political purposes, having for their object the administration of a portion of the powers of the state, include counties . . . .
The legislature was speaking of private corporations, not public corporations, in the liquor and beer laws. To say that *Page 361 
the legislature intended that counties should be licensed to sell liquor and beer would be to say that this unit of government, functioning for the good of the public, could promote the sale of an item that is harmful to the public.
As is stated in 9 McQuillin, Municipal Corporations
(3d Ed., Rev. Vol.), sec. 26.186, p. 483:
". . . It is widely if not universally recognized that intoxicating liquor businesses of all kinds are potentially if not actually dangerous or harmful to the public health, morality and welfare, and that consequently they are subject to strict supervision or prohibition by states and also by municipalities authorized to act in the matter . . . ."
While a county receives no delegation under the liquor and beer laws to engage in the sale of these items at a county golf course, it might be argued that a county is exempted from the coverage of these laws under a "sovereignty" theory. "There can be no doubt that a county stands as agent of the state." Kyncl v. KenoshaCo. (1968), 37 Wis.2d 547, 555. I recently concluded in 59 OAG 55 (1970), that the University systems may sell beer on the campus. The rationale was that "broad principles of sovereignty require that a state or its agencies performing a governmental function remain free of municipal control." But in that instance, the agency involved was the Board of Regents and was an enumerated branch or "agency" of the Executive Department. A county does not fall within the theory of State sovereignty because it is not the same type of agency as are the various councils, boards, commissions, divisions or committees of the State. A county is not the State or sovereign, and the rules regarding the sovereign do not apply to the county. Thus, my conclusion in 59 OAG 55 (1970), would be of no assistance to the facts at hand.
The only other statute that might possibly be construed to delegate the county power to operate a liquor and beer business is sec. 59.07 (1) (d) 1, Stats., cited supra. The argument would be that the words ". . . including all property, real and personal, pertinent or necessary for such purposes" are an authorization for a county to obtain a combination liquor-beer license. However, it is my opinion that such a *Page 362 
reading would frustrate the intent of the liquor and beer laws. In addition, the sale of alcoholic beverages is not "pertinent or necessary" to the function of a golf course. A golf course is for the playing of golf, not for the consuming of liquor or beer. Finally, while I do not express my opinion on the following matter at this time, I will point out that liquor and beer licenses are ". . . more in the nature of a privilege than a vested or a property right." State ex rel.Ruffalo v. Common Council (1968), 38 Wis.2d 518, 523; see also Marquette Savings and Loan Asso. v. Twin Lakes
(1968), 38 Wis.2d 310. Under these two cases, it is possible that sec. 59.07 (1) (d) 1, does not apply to a liquor license, since this section limits itself to real or personal property.
Thus, it is my informal opinion that a county may not receive a combination intoxicating liquor-fermented malt beverage license, or operate an alcoholic business on its own, at a county-owned golf course.
RWW:PAP