Peter G. **BRUNO** and James M. Bruno,
Plaintiffs,

v.

**CITY OF KENOSHA, a Wisconsin Municipal Corporation, Defendant.**

Bruce **BLEASHKA**, Plaintiff,

v.

**CITY OF KENOSHA, a Wisconsin Municipal Corporation, Defendant.**

**SLEEPY'S INC.**, Plaintiff,

v.

**CITY OF KENOSHA, a Wisconsin Municipal Corporation, Defendant.**

Fred **KAUZRICH**, Plaintiff,

v.

**CITY OF KENOSHA, a Wisconsin Municipal Corporation, Defendant.**

**Civ. A. Nos. 71–C–330 thru 71–C–333.**

United States District Court,
E. D. Wisconsin.

Oct. 21, 1971.

Jay Schwartz, Racine, Wis., for plaintiffs.

Michael S. Fisher, City Atty., Terry L. Constant, Asst. City Atty., Kenosha, Wis., for defendant.

REYNOLDS, Chief Judge.

These cases involve plaintiff tavern operators who prior to July of this year held liquor licenses duly issued by the defendant City of Kenosha pursuant to Wis. Stats. Chapter 176. This past June the defendant refused to renew these licenses. Plaintiffs allege with regard to the defendant's refusal to renew that (1) the procedure used by the city council in passing on the license applications violated the due process mandates of the Fourteenth Amendment, and (2) the reason for defendant's denials in each case was solely the nude and semi-nude dancing entertainment provided by plaintiffs in their taverns and that denials for this reason constitute infringements of plaintiffs' First Amendment rights as incorporated in the Fourteenth Amendment. Causes of action are alleged under Title 42 U.S.C. § 1983, and equitable relief ordering the issuance of liquor licenses is requested. Jurisdiction of this court is sought under Title 28 U.S.C. §§ 1331 and 1343.

On June 30, 1971, upon the verified complaints and affidavits of plaintiffs, briefs, and representations of counsel, and after a hearing in which all parties participated, I issued a temporary restraining order in each of these actions to the effect that the "City of Kenosha shall issue forthwith upon the tender of appropriate fees, a Class 'B' Retail Fermented Malt Beverage and Intoxicating Liquor License to * * * [plaintiffs' names] and to take all necessary steps to effectuate the same, until further order of the Court." Defendant subsequently brought on a motion to vacate the temporary restraining orders or, alternatively, to modify them. In addition, answers were filed and requests for admissions of fact and replies pursuant to Rule 36 of the Federal Rules of Civil Procedure and this court's order were exchanged by the parties.

On July 26, 1971, a hearing was held on defendant's motions, and on July 30, 1971, on the basis of that hearing, the record, and briefs of counsel, I denied the motions and indicated that I would apply for the convening of a three-judge district court. The purpose of this memorandum opinion is to explain my decision of July 30, 1971, and to continue the outstanding temporary restraining orders pursuant to Title 28 U.S.C. § 2284(3).

As a result of Rule 36 requests and replies in the instant cases, virtually all relevant facts have been agreed to. They are as follows.

The plaintiffs in these actions are persons engaged in the operation of taverns featuring nude and semi-nude dancing in the City of Kenosha. Each of the plaintiffs between June 1970 and June 1971 held a Class "B" liquor license duly issued by the defendant City of Kenosha pursuant to Chapter 176 of the Wisconsin Statutes. Prior to June 1971, the plaintiffs filed with defendant's clerk appropriate and timely applications for

the renewal of their Class "B" licenses for the license year 1971–1972. Public hearings were held by defendant, and for the purposes of those hearings, the plaintiff-applicants for licenses were segregated from the other 154 liquor license applicants because unlike the other 154 applicants, the plaintiffs featured nude entertainment in their bars. During the public hearings, the six plaintiffs were treated as a group rather than as individuals. At these hearings, residents of Kenosha were permitted to speak on the subject of plaintiffs' license renewals. Speakers, including attorneys representing plaintiffs, spoke both for and against issuance of licenses. No speaker was allowed to be cross-examined (although plaintiffs' attorneys never made such request) or was sworn under oath, and speakers were permitted to complain about what other unnamed persons had told them.

On June 7, 1971, the city council of defendant voted to deny plaintiffs' applications for license renewals because:

"1. The licensee, through his actions in general in operating his establishment has defiled the reputation of the City of Kenosha areawise, statewise and nationally.

"2. This person helped furnish an atmosphere conducive to the flourishing of prostitution, creating a bad environment and setting improper moral standards for the children in this community.

"3. Since the inception of the type of entertainment allowed by the licensee, the law enforcement problem has increased and the Police Department records indicate that parking and litter problems around the area and crimes of a violent nature escalated in areas of our city.

"4. The Chief of Police, head of the City's Police Department, recommends denial based on the fact that topless and bottomless entertainment as featured in the licensee's establishment is conducive to the lack of respect for law and authority as it relates to our community.

"5. Increased police surveillance of establishments of this type requires more man hours and thus proves costly to the taxpayers of the city.

"6. The type of entertainment conducted by the licensee promotes the 'wide open city' effect and is not attractive to new industry who may consider coming into the community.

"7. Entertainment, which has been allowed in this establishment, attracts an undesirable element from other cities who come to view the same."

and also because:

"The licensee has operated an establishment which has harmed the reputation of the City; has helped furnish an atmosphere conducive to the flourishing of prostitution, crime, parking and litter problems, additional law enforcement problems costly to the taxpayers, disrespect for law and authority, discouraging the attraction of new industry, attracting undesirables into the city and creating a bad environment and setting improper moral standards for the children in this community."

On June 21, 1971, the city council voted to reconsider the denial of licenses to the plaintiffs—

"On the basis of a signed agreement by five Class 'B' Tavern Licensees that there would be (1) No more topless, bottomless dancing (2) Female entertainers shall wear bottoms and tops when on licensed premises (3) No nude male entertainers (4) The injunction presently pending in Federal Court shall be dismissed upon enactment of a new cabaret ordinance * * *."

After a public hearing—

"The meeting was then turned over to Alderman Scoville, Council President, while Mayor Burkee took the floor stating that should the licenses in question be restored, he would veto."

The city council then voted to again deny liquor licenses to the five plaintiffs, citing for their reasons the reasons given at the June 7 meeting.

The only specification or charges by the city council officially given to the plaintiffs were given at the meetings where the charges were brought up and discussed prior to any vote being taken. During this period of time the city had no enforceable obscenity standard with regard to nude dancing entertainment in conjunction with licensing to dispense liquor, and no finding of obscenity was ever made by any court or the city council with regard to the entertainment furnished by the plaintiffs.

Finally, it is stipulated that plaintiffs each have an investment in excess of $20,000 in their tavern operations, that the business of each plaintiff survives primarily by the sale of liquor and that the loss of a liquor license will cause a grave loss of revenue and patronage to each plaintiff's business, depriving the plaintiffs of the ability to participate in the tavern business.

█ Plaintiffs assert jurisdiction of this court under Title 28 U.S.C. § 1343. I find that such jurisdiction is present pursuant to Title 42 U.S.C. § 1983. The City of Kenosha is a proper party defendant in a § 1983 cause of action seeking only equitable relief. Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585, 587 (7th Cir. 1961).

█ I have concluded that although neither plaintiffs nor defendants have requested in their pleadings the convening of a three-judge district court, on my own motion an application for one should be made for the reasons hereinafter stated.

█ Plaintiffs plead for their causes of action that the City of Kenosha in denying renewal of their liquor licenses failed to provide adequate notice of the meetings or charges to be brought, failed to require sworn testimony or allow cross-examination, allowed hearsay testimony, and denied the licenses without perceptible standards—in sum, that they were given only a legislative type hearing as oppposed to an administrative or quasi-judicial type hearing. De-fendant admits for the most part the factual content of this allegation but argues that the licensing procedure is proper under Wis.Stats. §§ 176.05(1) and (5) as interpreted by the Wisconsin Supreme Court in State ex rel. Ruffalo v. Common Council of City of Kenosha, 38 Wis.2d 518, 157 N.W.2d 568 (1968).

In *Ruffalo* the City of Kenosha denied renewal of a liquor license after holding a legislative type hearing because of the location of the tavern. The plaintiff in that action argued to the Wisconsin Court that the denial was arbitrary and without due process in that both state statutory and federal constitutional law required a quasi-judicial type hearing with the same type of rights that plaintiffs in the instant actions request. The Wisconsin Supreme Court held that there was no such right under either §§ 176.05(1) and (5) or the Constitution. In doing so it specifically rejected Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), rehearing denied 330 F.2d 55. In effect then plaintiffs are requesting equitable relief so as to prevent the defendant from enforcing Wis.Stats. §§ 176.05(1), and (5) as construed by the Wisconsin Supreme Court. Title 28 U.S.C. § 2281 dictates that if plaintiffs' contentions are correct, then the relief they seek may only be granted by a three-judge district court.

██ I next conclude that the contentions of the plaintiffs are not frivolous, that the constitutional issue presented is not insubstantial, and that should a three-judge court pass on the federal constitutional questions present in these cases plaintiffs enjoy a reasonably good chance of ultimate success in their lawsuits. There is strong authority indicating that the states, while they have wide discretion in intoxicating beverage questions, are not free from the precepts of the Fourteenth Amendment. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964), rehearing denied 330 F.2d 55;

Glicker v. Michigan Liquor Control Commission, 160 F.2d 96 (6th Cir. 1947); La Rue v. California, 326 F.Supp. 348 (C.D.Cal.1971); Irvis v. Scott, 318 F.Supp. 1246 (M.D.Pa.1970); Seidenberg v. McSorley's Old Ale House, Inc., 317 F.Supp. 593 (S.D.N.Y.1970); Midwest Beverage Co. v. Gates, 61 F.Supp. 688 (N.D.Ind.1945); Reynolds v. Louisiana Board of Alcoholic Beverage Control, 173 So.2d 57 (La.App.1965). Likewise it is doubtful that liquor licensing can escape these requirements simply because licenses might be termed privileges. *Id.*, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Shervert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). While the sixth circuit has held that in liquor licensing matters procedural rights such as plaintiffs claim are not owing under the Constitution, Lewis v. City of Grand Rapids, 356 F.2d 276 (6th Cir. 1966), the fifth circuit has come to the opposite conclusion, holding that such rights are required. Hornsby v. Allen, supra; Barnes v. Merritt, 428 F.2d 284 (5th Cir. 1970). Professor Davis in his Administrative Law Treatise has praised *Hornsby* and damned *Lewis*, 1970 Supplement, § 7.19, at 363–5. *Hornsby* has been cited favorably in Goldberg v. Kelly, supra, 397 U.S. at 262 n. 9, 90 S.Ct. 1011, 1018; Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968); and Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. 1970). In *Goldberg* it was specifically noted that *Hornsby* dealt with the "right to obtain a retail liquor store license." With regard to plaintiffs' second cause of action, the three judge court in La Rue v. State of California, supra, recently held that a state cannot per se forbid nude dancing in taverns in that (1) dancing is protected by the First Amendment, (2) nude dancing is not per se obscene, and (3) the interests of the state do not require such censorship. I further find that there is a reasonably good chance that should a three-judge court con-

vene, it will not abstain from deciding these questions on the basis of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in that none of these actions involve criminal prosecutions and no state court is enjoined. Finally, defendant contends that even should plaintiffs' contentions be correct, the relief they seek—the issuance of a license—could not be granted by a federal court. Berry v. Allen, 411 F.2d 1142, 1146 (6th Cir. 1969). The equity power of a federal court to fashion relief in order to preserve the constitutional rights of the people of this country has been held to be wide ranging and to extend into matters and actions often considered the private domain of local government. E. g., Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971); Griffin v. County School Board of Prince Edward County, 377 U.S. 218, 232–234, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); Jackson v. Ogilvie, 426 F.2d 1333 (7th Cir. 1970); Chambers v. Hendersonville City Board of Education, 364 F.2d 189 (4th Cir. 1966); State of Alabama v. United States, 304 F.2d 583 (5th Cir. 1962), aff'd 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112; Reynolds v. State Election Board, 233 F.Supp. 323 (W.D. Okl. 1964); note also State ex rel. Boroo v. Town Board, 10 Wis.2d 153, 160–161, 102 N.W.2d 238 (1960). If the allegations of the plaintiffs' complaints are found to be correct by the three-judge court, I find that there is a reasonable probability that that court will fashion a suitable equitable relief.

■ Pursuant to Title 28 U.S.C. § 2284(3), and for that purpose only, I find that on the basis of the record before me, including the affidavits and verified complaints of the plaintiffs, the representations of counsel, agreed statements of facts, and after hearings in this matter, irreparable damage will result if the outstanding temporary restraining order is not continued in each case. The plaintiffs are tavernkeepers, their livelihood and their investments are hinged upon their ability to sell liquor, and this ability in turn depends

**731**

upon possessing a liquor license. Were I to fail to continue the outstanding temporary restraining orders, plaintiffs would be left without means to earn their living. Nor are these actions of such a nature that if the temporary restraining orders were not continued and plaintiffs are ultimately successful in the main action that they might then be able to calculate the damage done and sue for monetary relief. See Minkoff v. Payne, 93 U.S.App.D.C. 123, 210 F.2d 689 (1963), where a temporary restraining order in a similar situation was approved.

Finally, defendant in the alternative has moved to modify the temporary restraining orders. In doing so it has offered no briefs, oral arguments, or reasons for such modification. Discretion dictates that unless sound reasons are advanced for such modification I insure the status quo until the three-judge court is convened.

It is therefore ordered, pursuant to Title 28 U.S.C. § 2284(3), that the temporary restraining orders presently outstanding in these actions be and they hereby are continued until further order of the court.